IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 94-CR-150-TCK |
| | ) |
| GERALD MARSHALL PAYNE, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the Defendant Gerald Marshall Payne's ("Payne's") Motion for Reduction of Sentence filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc.79). On June 22, 2022, the Government filed its Response (Doc. 81). The Government responded that it had reviewed Payne's motion and had no opposition to the relief requested.

Payne seeks a reduction in sentence based on extraordinary and compelling circumstances, and a combination of factors which warrant relief. Based on the following, Payne contends he is eligible for relief under 18 U.S.C. § 3582(c)(1)(A). Further, Payne maintains that he is not a danger to the community and that the 18 U.S.C. § 3553(a) factors support a reduction in sentence.

**I. Background**

Payne submits the following scenario in support of his motion. Payne was born and raised in Tulsa, Oklahoma. See Presentence Investigation Report ("PSR") at ¶ 96. His parents divorced when he was five years old. *Id*. He had five brothers and two sisters, but one sister passed away during his childhood. *Id*. After high school, Mr. Payne attended Eastern Oklahoma State College on a track scholarship and studied architectural drawing and drafting. *Id.* at ¶ 103. During college, after his first child was born, he dropped out of school and returned home to work and support his family. *Id.* at ¶¶ 98, 103. Struggling with early fatherhood and his failure to complete college,

Payne sank into a severe depression and became addicted to powder and crack cocaine. *Id.* at ¶ 102. It was during this time that Payne received his only prior conviction for second degree burglary. *Id.* at ¶ 86. He sought drug treatment and attempted to reorient his life by getting married and returning to college at Texas Southern University to study accounting. *Id.* at ¶¶ 98, 102, 103. However, he soon relapsed, losing his marriage, and then losing his second chance at college. *Id.* at ¶¶ 98, 102, 103. Unable to afford private drug treatment, he sought admittance to a state funded drug treatment program and went into debt while waiting for an opening in the program. *Id.* at ¶ 102. Prior to the offense conduct in this case, Payne had been addicted to drugs for several years and was heavily indebted to his co-defendant, Gregory Thomas. *Id.* at ¶ 102.

On October 7, 1994, Payne and three others were charged in a nine-count indictment for robbery and carjacking offenses that occurred over a two-day period in April 1994. (Doc. 1). Payne was charged with two counts of conspiracy, in violation of 18 U.S.C. § 371 (Counts 1 and 2); two counts of armed carjacking, in violation of 18 U.S.C. § 2119 (Counts 3 and 7); two counts of possession of a firearm by a felon, in violation of 18 U.S.C. § 924(c) (Counts 4 and 8); one count of extortion, in violation of 18 U.S.C. § 1951 (Count 5); one count of bank robbery, in violation of 18 U.S.C. § 2113(a) (Count 6); and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count 9). *Id.*

After proceeding to trial, Payne was convicted on all counts and sentenced on April 21, 1995, to 421 months imprisonment. (Doc. 24). The 421 month sentence consisted of: 121 months imprisonment for Counts 3, 5, 6, and 7, and a mandatory consecutive 300 months imprisonment (+60, + 240) for the two violations of § 924(c). *Id.* Payne's co-defendants Darryl Lamont Haynes was sentenced to 196 months (approximately 16 years), while Gregory Ronel Thomas received a

60-month sentence that was run concurrently to a 15-year state sentence for the same offense conduct. (Docs.23, 30).

Pursuant to 18 U.S.C. § 924(c) at the time, Payne received a mandatory consecutive 5-year sentence for the first § 924(c) offense, and a mandatory consecutive 20-year sentence for the second § 924(c) offense. Thus, the "stacking" of § 924(c) offenses resulted in Payne receiving a mandatory 25 years in prison for the firearm used in these offenses.

Payne has now served over 27 years of his 35-year sentence. He has served 78% of his total term of imprisonment and 92% of his sentence calculating his good time credit. See Inmate Data, Exhibit 1. He has an expected release date of May 11, 2024, when he will be 58 years old.

Payne submitted a request for compassionate release to the Warden of Fort Worth FMC on February 2, 2022. The warden has not responded. Because more than 30 days have elapsed since the submission of Payne's request, the Court is now authorized to consider his motion for compassionate release. 18 U.S.C. § 3582(c)(1)(A).

Since Payne's sentencing in 2001, significant reforms have been made within the criminal justice system to avoid excessively long prison sentences. Although many changes have not been deemed retroactively applicable, numerous district courts have found that the massive sentencing disparities caused by recent legislation, as well as a combination of other factors, may warrant a reduction in sentence through 18 U.S.C. § 3582(c)(1)(A).

**II. Applicable Law**

In December 2018, Congress enacted the First Step Act ("FSA") which modified §3582(c)(1) of Title 18 of the United States Code to allow a defendant to bring a motion for modification of sentence where "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582(c) now reads:

3

(c) Modification of an Imposed Term of Imprisonment. –The court may not modify a term of imprisonment once it has been imposed except that—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under § 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

If the Court finds the exhaustion requirements are met and extraordinary and compelling circumstances are present, the Court may reduce a term of imprisonment "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Further, the statute requires the Court "to consider the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable." *Id.*; See also, *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. Apr. 1, 2021).

**A. Exhaustion Requirement**

Although there has been a significant split among district courts on whether the exhaustion requirement of § 3582(c)(1)(A) is jurisdictional and/or excusable, the Tenth Circuit Court of Appeals has recently held that exhaustion should be "treat[ed] as a mandatory claim-processing rule." *United States v. Watson*, No. 20-5046, ft.n. 1 at 2 (10th Cir. June 24, 2021) citing *Hamer v. Neighborhood Hous. Servs. Of Chicago*, 138 S.Ct. 13, 17 (2017) ("If properly invoked, mandatory

claim-processing rules must be enforced, *but they may be waived or forfeited*." (emphasis added)).

### B. Extraordinary and Compelling Circumstances

As many district courts have noted post-First Step Act, "Congress has not specified the circumstances that qualify as 'extraordinary and compelling reasons' except to state that a reduction pursuant to this provision must be 'consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. Apr. 1, 2021); *United States v. Bucci*, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019). The applicable policy statement of the Sentencing Commission can be found at U.S.S.G. § 1B1.13. The commentary to this section states:

1. Extraordinary and Compelling Reasons. –Provided the defendant meets the requirements of subdivision (2) [not a danger to society], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant. –

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. –The defendant (i) is at least 65 years old; (ii) is experiencing serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances. –

(i) The death or incapacitation of a caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

>    (D) Other Reasons. –As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13.

However, the Tenth Circuit has recently clarified this position and held that § 1B1.3 is not binding on district courts "when a defendant files a motion to reduce sentence under § 3582(c)(1)(A) directly with the district court." *Id.*

### C. Sentencing Commission Policy and 18 U.S.C. § 3553(a) Factors

Section 3582(c)(1)(A) allows for a court to reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that– (i) extraordinary and compelling reasons warrant such a reduction; … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"

The § 3553(a) "factors include, among other things, '(1) the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as '(2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant.'" *United States v. Rodriguez-Orejuela*, 2020 WL 2050434, at *4 (S.D. Fla. Apr. 28, 2020) (quoting 18 U.S.C. § 3553(a)).

Under § 1B1.13 of the U.S. Sentencing Guidelines, the Court may reduce a term of imprisonment after consideration of the § 3553(a) factors, if the Court determines that:

>    (1) (A) extraordinary and compelling reasons warrant the reduction;
>
>    (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>    (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(1)-(3).

### III. A Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) is Warranted

### A. Payne Has Met the Exhaustion Requirements of § 3582(c)(1)(A)

As noted *supra*, on July 7, 2020, Payne submitted a written request to the warden requesting a compassionate release pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i). More than 30 days have elapsed since the warden at his facility received his request. Therefore, Payne has fully exhausted his administrative appeals and has met the exhaustion requirements under 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Circumstances Justify a Reduction in Sentence

In considering Payne's motion, the Court has reviewed the three-part test adopted by the Tenth Circuit in *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. Apr. 1, 2021) (citing *United States v. Jones,* 980 F.3d 1098, 1107 (6th Cir. 2020)). Step one requires the Court to determine at its discretion, whether "extraordinary and compelling reasons" exist to warrant a sentence reduction. Step two requires that the Court find whether such reduction is consistent with applicable policy statements issued by the United States Sentencing Commission. Step three requires the Court to consider any applicable 18 U.S.C. § 3553(a) factors and determine whether the reduction authorized by steps one and two is warranted under the particular circumstances of the case. However, because the policy statements of the Sentencing Commission have not been updated since enactment of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018), which amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to file motions for compassionate release directly with the Court, the existing policy statements are not applicable to motions filed directly by defendants. *Id*. at 12. Further, when any of the three prerequisite steps are lacking, the Court may deny a compassionate release motion and does not need to address the other steps. The Court must address all three steps when granting such motion. *Id.* at 13 n.4. (citing *United States*

*v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)). See also *United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021).

The extraordinary and compelling circumstances presented in the instant case relate in part to the lengthy sentence of 421 months in the Oklahoma Department of Corrections following Payne's jury trial. This sentence is significantly longer than both the national and Tenth Circuit average sentence for murder. According to the U.S. Sentencing Commission, in fiscal year 2018 the national average sentence for murder was 244 months and the Tenth Circuit average was 224 months.[1] *United States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md. Apr. 30, 2020), aff'd sub nom. *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) (citing these statistics in support of granting a reduction of defendant's § 924(c) sentence); *United States v. Redd*, 444 F. Supp.3d 717, 728, n.20 (E.D. Va. 2020) (same).

There is an 11-year disparity between the sentence Payne received in 1995 and the sentence Congress now believes to be an appropriate penalty for the defendant's conduct. If sentenced today, Payne would likely receive a consecutive 84 months for the first § 924(c) conviction and 84 months for the second § 924(c) conviction. If he received the same sentence of 121 months for the remaining convictions, then his sentence today would likely be 289 months, or 24 years.

Payne has now served over 27 years of his 35-year sentence.[2] He has served 78% of his total term of imprisonment and 92% of his sentence calculating his good time credit. (Doc. 79,

---

[1] U.S.S.C., Statistical Information Packet, Fiscal Year 2021, Tenth Circuit (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/10c21.pdf.

[2] Payne served a concurrent Oklahoma state sentence from Feb. 17, 1995 to March 14, 2017 based on the same conduct as the federal offenses. *See* PSR at ¶ 87. He entered the Bureau of Prisons to serve the remainder of his sentence on July 18, 2007.

Inmate Data, Exhibit 1). He has an expected release date of May 11, 2024, when he will be 58 years old. *Id*. at 3.

Finally, the length of sentence compared to similarly culpable co-defendants also qualifies as a further "extraordinary and compelling" reason. Payne committed the offense in this case with three co-defendants—two of whom were prosecuted—Gregory Ronel Thomas, Jr. ("Thomas"), and Darryl Lamont Haynes ("Haynes"). Unlike Payne, both Thomas and Haynes entered guilty pleas. Thomas pled guilty to Count One, the conspiracy charge. PSR at ¶ 14. He received a sentence of 60 months, which ran concurrently to the 15-year sentence he received in state court for the same offense conduct. *Id.;* (Doc. 23). Haynes entered a plea to Counts Two (Conspiracy), Seven (Carjacking) and Eight (§ 924(c)). PSR at ¶ 16. He received a 196-month (16-year) sentence. Both co-defendants were released from prison years ago while Payne remains incarcerated. *See Watson*, 2022 WL 1125801, at * 8-9 (finding it extraordinary and compelling that co-defendants in a string of armed robberies received far more lenient sentences and have been released while defendant remained incarcerated).

Therefore, the Court finds Payne presents a number of extraordinary and compelling reasons which warrant compassionate release including: (1) the disparity between his original sentence and the sentence he would receive today based upon the First Step Act and (2) the length of his sentence compared to similarly culpable co-defendants.

### C. A Reduction in Sentence is Warranted After Consideration of the 18 U.S.C. § 3553(a) Factors and Sentencing Guidelines Policy

Having established that Payne has exhausted his administrative appeal, and that extraordinary and compelling circumstances exist, the Court must consider the factors under 18 U.S.C. § 3553(a) and the Sentencing Guidelines policy to determine whether a reduction in sentence is warranted.

9

Importantly, evidence of post-sentence rehabilitation is likely the most critical of core considerations for the Court in a § 3582(c) proceeding. In *Pepper v. United States*, 131 S.Ct. 1229, 1241 (2011), the Court emphasized the important nature of post-sentence rehabilitation, stating that "there would seem to be no better evidence than a defendant's post incarceration conduct." *Id.* Indeed, the Court continued, "Post-sentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.* at 1242.[3] See e.g. *United States v. Millan*, 91-CR-685 (LAP), 2020 WL 1674058, at *9 (S.D.N.Y. Apr. 6, 2020) (granting a sentence reduction under § 3582(c) to a defendant who ran a drug-trafficking organization, given that "[the defendant], in the face of a life sentence, assumed a positive outlook and attitude towards life, sought to improve himself to the utmost extent possible and was motivated to do so notwithstanding his circumstances").

Looking to the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1), Payne recognizes the severity of his wrongdoing and has committed himself to proving his rehabilitation. Throughout his years of incarceration, he has demonstrated a commitment not only to rehabilitation, but educational, professional, and personal success. While in state prison, he successfully completed an intensive 24-hour/7-day a week residential drug treatment program

---

[3] "In addition, evidence of post sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.' § 3553(a)(1). Such evidence may also be pertinent to 'the need for the sentence imposed' to serve the general purposes of sentencing set forth in § 3553(a)(2) – in particular, to 'afford adequate deterrence to criminal conduct,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with needed educational or vocational training…or other correctional treatment in the most effective manner." §§3553(a)(2)(B)-(D); see *McMannus,* 496 F.3d, at 853 (Melloy, J., concurring) ("In assessing…deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post incarceration conduct"). *Id.*

10

to overcome his drug addiction and the underlying behaviors that led to his drug abuse. He has remained drug and alcohol free for the 27 years he has been incarcerated. *See* Progress Report, (noting that Mr. Payne's drug education is complete as of 4/10/2010). In the BOP, Payne has immersed himself in education and enrichment classes. *Id.* Most significantly, he graduated from the BOP's intensive 4500-hour Apprenticeship program in Recreation (i.e. physical training) and has worked as an Orderly in the prison's Recreation Department since 2017. *Id.* The prison reports that Payne "has a good rapport with both staff and his peers. He is not considered a management concern." *Id.* This comports with Payne's PATTERN score, which reflects a score of LOW in both "general" and "violent" recidivism categories. Finally, Payne has met his financial obligations, having paid $1,223.00 in restitution and a $3,000 fine.

Considering Payne's lengthy sentence, combined with his significant efforts at rehabilitation, the Court finds extraordinary and compelling circumstances which form the basis for relief. Therefore, the Court finds that a reduction under § 3582(c)(1)(A) to a sentence of time served is "sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a).

### IV. CONCLUSION

Based on the foregoing, the Court grants Payne's Motion for Compassionate Release (Doc.79). Defendant's sentence is hereby reduced to time served, plus 14 days. The fourteen-day period prior to release from the Bureau of Prisons should be spent in quarantine for protection of the public. The Bureau of Prisons is directed to provide a plan of release to the United States Probation office for the Northern District of Oklahoma expeditiously.

**IT IS SO ORDERED** this 23rd day of June, 2022.

*Terence Kern*
TERENCE C. KERN, U.S. District Judge